IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 1-24-cv-01084-UA-JEP



| | |
|---|---|
| CASIM NOBLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) **PLAINTIFFS'MEMORANDUM** |
| v. | ) **IN RESPONSE TO MOTION TO** |
| | ) **DISMISS** |
| | ) |
| | ) |
| TOSHIBA GLOBAL COMMERCE | ) |
| SOLUTIONS, INC., STEVEN MENSCH, | ) |
| JAMES FORNABIO, MICHAEL | ) |
| GLENDENNING, SCOTT ENKE, | ) |
| PATRICK TARRY, AMANDA | ) |
| STEVENS, and BOB HUNSINGER, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Casim Noble, pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure, and

Local Civil Rules 7.1-7.3, hereby submit this Memorandum of Law in Response To Defendant's

Motion To Dismiss Plaintiff's Complaint.


This Court granted Plaintiffs' request for extension pending EEOC FOIA request. As of this date

Plaintiff has not received FOIA request and has been notified that it is still pending. As such

Plaintiff respectfully responds to defendant's motion but requests permission to supplement the

record


I. **DOES THE NATIVE AMERICAN ANCESTRY OF PLAINTIFFS GREAT**

**GRANDFATHER BAR ACTION FOR RACIAL DISCRIMINATION AS A**

**BLACK AMERICAN MINORITY AS ARGUED BY DEFENSE COUNSEL?**

1

To survive a motion to dismiss, a complaint must ***plead "enough facts*** to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "In adjudicating a motion to dismiss, a court may consider only **1)** the complaint, **2)** any written instrument attached to the complaint as an exhibit, **3)** any statements or **4)** documents incorporated in it *by reference*, and any **5)** document upon which the complaint heavily relies." In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013), certified question accepted sub nom. Thelen LLP v. Seyfarth Shaw LLP, 22 N.Y.3d 1017 (2013), and certified question answered, 24 N.Y.3d 16 (2014) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C 2004)

The plaintiff need only plead facts that permit the court to reasonably infer each element of the prima facie case. McCleary-Evans, 780 F.3d at 585; see also Coleman v. Md. Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (stating that a complaint must "assert facts establishing the plausibility" that plaintiff was terminated based on race).

However, "*pro se* litigants are allowed even greater latitude [than litigants represented by counsel] to correct defects in service of process and pleadings." Miller v. Northwest Region Library Bd., 348 F. Supp. 2d 563, 567 (M.D.N.C. 2004) (Beaty, J.); see also Lisson v. ING GROEP N.V., 262 Fed. App'x 567, 571 (5th Cir. 2007); Moore v. Agency for Int'l Dev., 994 F.2d 874, 876, 301 U.S. App. D.C. 327 (D.C. Cir. 1993).

2

Contrary to Defense Counsel assertion Plaintiffs' Great Grandfather's ancestry should not be a bar to redress. I am no different from many Black Americans who's family has resided in the U.S. for hundreds of years. I am indeed a minority of predominantly African American descent and was discriminated against by defendants because of my race.

## II. DOES PLAINTIFF PROVIDE SUFFICIENT GROUNDS FOR RACIAL DISCRIMINATION CAUSE OF ACTION PURSUANT TO 42 USC TITLE VII?

To establish a prima facie case of discriminatory employment practices under **Title VII** or 42 U.S.C. § 1981, plaintiff must show **(1)** her membership in a protected class; **(2)** an adverse employment action; **(3)** that at the time of the adverse employment action, she was meeting her employer's legitimate expectations; and **(4)** that the adverse employment action "occurred under circumstances giving rise to an inference of unlawful discrimination." Swaso v. Onslow Cnty. Bd. of Educ., 698 F. App'x 745, 748 (4th Cir. 2017) (quoting Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). "affect[ed] the terms, conditions, or privileges of employment *or future employment opportunities* such that a reasonable trier of fact could find objectively tangible harm," Holcomb v. Powell, 433 F.3d 889, 902, 369 U.S. App. D.C. 122 (D.C. Cir. 2006) (citation omitted). Plaintiff is a Black American. At all times during defendants adverse actions Plaintiff was meeting and exceeding his employers "Legitimate Expectations" as reflected by +$4, 000, 000, as well as over 60 data models and projects Plaintiff has contributed to Toshiba GCS to date.

Title VII liability *also extends to any "adverse employment [\*31] action"* that had "some significant *detrimental effect* on [the employee]." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir.

3

1999). Adverse employment actions include any "acts or harassment [that] adversely [affected] 'the terms, conditions, or benefits' of the plaintiff's employment." Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001) (quoting Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997)), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62, 66-68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Title VII also makes it unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or *otherwise adversely affect* his status 42 U.S.C. § 2000e-2(a)(2)

## STANDARD FOR HARM RESULTING FROM ADVERSE ACTION

The justices held that showing discriminatory changes in a person's employment requires pleading harmful differences in treatment or actions that treat an employee worse because of

Under the new standard propagated in Muldrow, "The employee need not show, however, that the harm was 'significant,' and the Supreme Court specifically repudiated lower court precedents that 'disregard various kinds of disadvantage,' "The status of the harasser is also a 'significant factor' to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious." McIver, 42 F.4th at 408 (citation omitted)

The adverse actions taken against Plaintiff are typical of many deemed to be of significant harm in the 4th Circuit including, but not limited to, demotion from his leadership role without warning, explanation or justification which directly affected his status in the chain of command; future promotion prospects and eligibility, false disciplinary charges which were strategically used to devalue Plaintif during performance reviews, discriminatory disciplinary charges such as copying the CEO on contract matter which no white employee has ever been written up for; subject to false performance reviews containing fraudulent claims and used to devalue my rating;

4

disqualify him for merit pay and bonus and classify him formerly as a "Detractor" in his personnel file and amongst coworkers. This fraudulent formal classification was manipulated and quantified in a manner which deviated from policy and practice proscription. My full contributions were suppressed from my assessment so as not to be quantified as part of the computation to lower my score. Plaintiff's reputation within the company has been wrongly defamed. None of the white employees here have been subjected to such treatment. All of whom have same or similar work history as Plaintiff.

SATISFACTORY JOB PERFORMANCE

In *Haynes*, the court held that, "a showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee. Rather, a plaintiff must show only that he was qualified **[*19]** for the job and that he was meeting his employer's legitimate expectations." *Id.* (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515-16 (4th Cir. 2006)).

Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019),

ESTABLISHING FALSE PRETEXT

The Fourth Circuit "has held that to establish that an employer's 'proffered reason for the challenged action is pretext for **discrimination**, the plaintiff must prove both that 1) the reason was false, and 2) that **discrimination** was the real reason for the challenged conduct.'" DeJarnette v. Corning Inc., 133 F.3d 293, 298 (4th Cir. 1998)

A genuine dispute is created where the reason provided is "so **[*30]** questionable as to raise an *inference of deceit.*" *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015).

5

"Deviation from regular procedures is a classic example of evidence used to show pretext." *Weaks v. N.C. Dep't of Transp.*, 761 F. Supp. 2d 289, 304 (M.D.N.C. 2011) (citations and internal quotation marks omitted).

SUFFICIENTLY SIMILAR COMPARATOR ANALYSIS PREMATURE DURING 12(b) (6) STAGE

"evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at this point. . . . *The similarly situated analysis typically occurs in the context of establishing a [\*40] prima facie case of discrimination, not at the 12(b)(6) stage*." Woods v. City of Greensboro, 855 F.3d 639, 650-51 (4th Cir. 2017) (citing Haywood v. Locke, 387 F. App'x 355, 358-59 (4th Cir. 2010))

Current Fact Pattern: Disparate Treatment is presumed when adverse actions are Per Se Unlawful. **1)** the nature of the requirements for promotion, **2)** [the plaintiff's] own qualifications, **3)** the qualifications and **4)** rule violations of his proposed comparators, Jordan Slaughter, Bryan Sperry and Adrianna Volker **5)** even **[\*10]** the proposed comparators' **6)** Double Standards for punishment and privileges **7)** Marginalization. **8)** Exclusion **9)** Labeling **10)** Subversion **11)** Demotion **12)** Reducing **13)** Discriminatory Discipline **14)** False Disciplinary Charges 15) *Adverse employment actions also include actions 'that would adversely affect one's professional reputation* or ability to gain future employment, **whether or not there was an ultimate employment decision.'**" (quoting Howze v. Va. Polytechnic, 901 F. Supp. 1091, 1098 (W.D. Va. 1995))), aff'd, 191 F. App'x 193 (4th Cir. 2006)

**16)** Fraudulent Performance Evaluation (holding, at the summary judgment stage, that actions "besmirch[ing]" employee's reputation could serve as an adverse employment action in the context of an ADEA retaliation claim); Salami v. N.C. Agric. & Technical State Univ., 394 F.

6

Supp. 2d 696, 719 (M.D.N.C. 2005) **17**) Fraudulent PIP, **18**) Fraudulent Final Warning Responsibilities **19**) Performance Fraud.

**20**) Diminishing Plaintiff in front of White Colleagues kicking him out of meetings and canceling calls he was invited to without justification, 21) depriving Plaintiff inclusion with professional development projects and then falsifying records to make it appear Plaintiff was present.

The District Court found [*29] 1) minimizing Plaintiff's competence and 2) reducing her capacity to direct her research output "in contrast with the latitude extended to white students," 3) interfering with Plaintiff's research which "lacked the support from her primary academic advisors that was customarily extended to white students," 4) subjecting Plaintiff to "stereotypical assumptions regarding her demeanor and behavior that are tropes regularly associated with pejorative racial views of African-American females," and 5) the fact that "Plaintiff's high levels of academic performance and achievement were not deemed sufficient conditions to continue her enrollment in the Ph.D[.] program, a contrast with how Defendants measured the qualifications of white students." Brown v. Univ. of N.C. at Chapel Hill, 2023 U.S. Dist. LEXIS 189249

### III. DOES PLAINTIFF PROVIDE SUFFICIENT GROUNDS FOR RACIAL DISCRIMINATION CAUSE OF ACTION PURSUANT TO 42 USC 1981?

The Supreme Court has held that, because § 1981 was expanded by legislative action in 1991 to cover racial discrimination in any term or benefit of employment, the four-year federal statute of limitations applies to § 1981 race discrimination claims. R.R. Donnelley, 541 U.S. at 383-84.

The elements required to establish a prima facie case of race discrimination are the same under **Title VII** and section 1981; therefore, the court considers these claims

7

together. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n.7 (4th Cir. 2002); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285-86 (4th Cir. 1985)

PRIMA FACIE SHOWING OF DISCRIMINATION PREMATURE AT 12 (b) (6) STAGE

However, at the motion to dismiss stage, **a plaintiff is not required to plead a prima facie case of discrimination**. Swierkiewicz, 534 U.S. at 511; see also Iqbal, 556 U.S. at 682-83 (plaintiff must plead facts supporting *reasonable inference of discriminatory intent*).

## IV. <u>DOES PLAINTIFF PROVIDE SUFFICIENT GROUNDS FOR RETALIATION CAUSE OF ACTION PURSUANT TO 42 USC TITLE VII?</u>

Supreme Court and circuit precedent, which hold retaliation to be a form of differential treatment subsumed in the anti-discrimination language of Section 1981. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543 (4th Cir.2003) (holding that a "plaintiff can prove illegal retaliation under ... § 1981" in the same manner as he establishes retaliation under Title VII); *see also Jackson v. Birmingham Bd. of Ed.,* 544 U.S. 167, 174-75, 125 214*214 S.Ct. 1497, 161 L.Ed.2d 361 (2005)

Under *McDonnell Douglas*, she has the initial burden of establishing a prima facie case of retaliatory discrimination. A prima facie case consists of proof that: "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Walton*, 33 F.4th at 177 (citation omitted). Regarding the third element, "little is required" to establish a *causal connection*. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998). A plaintiff may prove a **Title VII** retaliation claim either by direct or indirect evidence, or under the McDonnell Douglas burden-shifting framework. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

8

"Employees may prove that their employer **retaliated** against them for engaging in protected activity through one of two ways: **(1)** by direct evidence of retaliatory **animus (Policy deviation and Mikes admission and false statements equal bad faith)**; or **(2)** through the . . . burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022).

"[I]nformal complaints about discriminatory treatment relating to a protected status constitute protected activity" for purposes of a retaliation claim. Volochayev v. Sebelius, 513 F. App'x 348, 354 (4th Cir. 2013). "'[w]hen an employee communicates to her employer a belief that the employer has engaged in... a form of employment discrimination, that communication'" virtually always "'constitutes the employee's opposition to the activity.'" *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009).

plaintiffs must allege facts plausibly supporting an inference of causation, a task that may be accomplished by alleging facts that show the employer took an adverse action "soon after becoming aware" of protected activity. Strothers, 895 F.3d at 336

## PROXIMITY AS EVIDENCE OF CAUSAL NEXUS

A party can prove causation in two ways: (1) by "show[ing] that the adverse act bears sufficient temporal proximity to the protected activity," or (2) by showing "the existence of facts that suggest that the adverse action occurred because of the protected activity," or a combination **[*32]** of the two. Smith v. CSRA, 12 F.4th 396, 417 (4th Cir. 2021)

If a plaintiff is proving causation by temporal proximity alone, the adverse employment action must be "very close" in time to the protected activity. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S 268, 273 (2001) (per curiam).

9

"In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" Lettieri, 478 F.3d at 650 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). "[E]vidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri, 478 F.3d at 650.

Continuing actions are sufficient to plausibly infer there was not a "lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action" which would "negate[] any inference that a causal connection exists between the two," Dowe, 145 F.3d at 657. Because Plaintiff has plausibly alleged a claim of retaliation, this court will deny Defendant's Motion to Dismiss the claim under Rule 12(b)(6).

**A "ten-week lapse of time" between protected activity and the** adverse employment action **"sufficiently establishe[s] a prima facie case of retaliation" for purposes of a motion to dismiss. <u>Silvia v. Bowie State Univ., 172 Fed. Appx. 476, 478 (4th Cir. 2006)</u> (per curium) (vacating a** district court's order granting the defendant's motion to dismiss the plaintiff's claim of retaliatory discharge); cf. <u>King v. Rumsfeld, 328 F.3d 145, 151, 151 n.5 (4th Cir. 2003)</u> (concluding that *ten weeks* between the protected activity and adverse employment action "gives rise to a sufficient inference of causation" *when an end-of-year performance review was already scheduled for that time*, although the court noted that "[t]his length of time . . . is sufficiently long so as to weaken significantly the inference of causation between the two events"). Indeed, the Fourth Circuit has found that a defendant's persistent engagement in a series of acts over a period of time tolls the temporal proximity. "Further, P&G's alleged actions in the period between Plaintiff's initial complaints and Plaintiff's ultimate termination in late 2017 — gathering complaints about Plaintiff's work performance, instituting a board

10

investigation, and removing Plaintiff's work validation — support at least an inference of retaliatory animus throughout [*15] this period". Robinson v. P&G Mfg. Co., 2019 U.S. Dist. LEXIS 32638

Michael specifically criticized Plaintiff's EEOC filing.

"A plaintiff may demonstrate retaliation through either direct evidence of retaliation or through the McDonnell Douglas burden-shifting framework. Direct evidence encompasses **conduct** or statements that both (1) reflect directly the alleged retaliatory attitude, and (2) bear directly on the contested employment decision." Johnson v. United Parcel Serv., Inc., 839 F. App'x 781, 783 (4th Cir. 2021)

Exclusion from Meetings

**a reasonable juror could find that** her exclusion from these meetings affected [**27] the terms and conditions of her employment so as to be materially adverse and to have dissuaded a reasonable worker from making or supporting a charge of discrimination. Defendant's motion on this point will be denied. **Allen v. Napolitano, 774 F. Supp. 2d 186**

Performance Ratings

**Allen v. Napolitano, 774 F. Supp. 2d 186**

Lack of Recognition for Project

On the question of whether an employer's formal lack of recognition for a project has adverse impact on the employee the District Court assessed the relationship between recognition and reward to determine whether the denial of recognition results in loss of merit or pay.

plaintiff must show how the decision not to nominate her or give her the award materially affected the terms, conditions, or privileges of her employment, thereby causing "objectively

11

tangible harm." Id. Courts have found such harm when the plaintiff can demonstrate a connection between the failure to receive an award and the loss of a financial bonus. See Weber v. Battista, 494 F.3d 179, 184-85, 377 U.S. App. D.C. 347 (D.C. Cir. 2007) [**30] (plaintiff alleged having receiving bonuses after several positive evaluations but not after mediocre evaluation) Russell, 257 F.3d at 818-19 (bonus directly tied to plaintiff's performance and a higher rating would have automatically meant a larger bonus)

Negative Performance Evaluation Combined with PIP

United States District Court for the Middle District of North Carolina

 Taylor v. Small, 350 F.3d 1286, 1293, 358 U.S. App. D.C. 439 (D.C. Cir. 2003) (finding that "loss of bonus money because of an improperly low performance rating may constitute an adverse employment action").  Douglas, 559 F.3d at 552-53 (ruling that if a performance evaluation determines a discretionary bonus, then the employee can show "objectively tangible harm"); Porter v. Shah, 606 F.3d 809, 818, 391 U.S. App. D.C. 41 (D.C. Cir. 2010) (ruling that *negative assessment* of plaintiff *together with* his *placement on Performance Improvement Plan* could have affected his "position, grade level, salary, or promotion opportunities" and was materially adverse); Steele, 535 F.3d at 696 (ruling that the issuance of the lowest performing rating and the lowest performance bonus can be retaliatory); Weber, 494 F.3d at 184-85 (finding that a lower performance evaluation that could have caused plaintiff not to receive a performance award was a materially adverse action); Russell, 257 F.3d at 819 (finding that a smaller cash bonus as a result of a poor performance rating is a cognizable employment action under Title VII).

Training Opportunities

12

Denial of training opportunities is materially adverse only if there is a "material change in . . . employment conditions, status, or benefits." Dorns v. Geithner, 692 F. Supp. 2d 119, 133 (D.D.C. 2010)

Attack on Professional Reputation

Allegations that retaliatory actions caused the loss of professional reputation can constitute adverse employment actions for purposes of employment retaliation claims. See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (holding, at the summary judgment stage, that actions "besmirch[ing]" employee's reputation could serve as an adverse employment action in the context of an ADEA retaliation claim); Salami v. N.C. Agric. & Technical State Univ., 394 F. Supp. 2d 696, 719 (M.D.N.C. 2005) ("[I]n the retaliation context, the retaliation need not reach the level of hiring, refusing to promote, or discharging, where the alleged retaliatory acts alter the terms, conditions, or benefits of employment. *Adverse employment actions also include actions 'that would adversely affect one's professional reputation* or *ability to gain future employment, whether or not there was an ultimate employment decision.'"* (quoting Howze v. Va. Polytechnic, 901 F. Supp. 1091, 1098 (W.D. Va. 1995))), aff'd, 191 F. App'x 193 (4th Cir. 2006)

United States District Court for the Middle District of North Carolina

September 24, 2020, Decided; September 24, 2020, Filed

**When Facts surrounding PIP are Suspicious**

Plaintiff survived the motion to dismiss because the Court found that the short time between the December 2, 2014 MCCR Notice Letter and the December 24, 2014 Evaluation and PIP action was suspicious, especially in light of Plaintiff's prior positive reviews. Brown v. Hous. Auth. of Balt. City, 2018 U.S. Dist. LEXIS 72854

Discriminatory Disciplinary Charges

To establish a prima facie case of discrimination in the enforcement of employee **disciplinary** measures, the plaintiff must show: (1) that he is a member of a class protected by **Title VII**, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the **disciplinary** measures enforced against him were more severe than those enforced against those other employees (Or that they were never charged). *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985). "less discipline (or no discipline) was imposed on the white employees." Redmon v. FlexSol Packaging Corp., 2021 U.S. Dist. LEXIS 55223

Fraudulent Disciplinary Charges Per Se Violation is Direct Evidence of retaliatory animus.
MANUFACTURED PERFORMANCE IMPROVEMENT PLAN

Hughes v. Research Triangle Inst., 2012 U.S. Dist. LEXIS 135876

V. **ARE THE STATUTE OF LIMITATIONS RELATED TO FIRST EEOC COMPLAINT FILED SEPTEMBER 11, 2023 TOLLED BY EEOC DETERMINATION TO CONSOLIDATE AND ACCEPT SECOND JANUARY 2024 EEOC COMPLAINT AS "RELATING BACK" TO SEPTEMBER 11, 2023 UNDER CONTINUING CIVIL CONSPIRACY AND NORTH CAROLINA CONTINUING WRONG DOCTRINES?**

When the continuing violation doctrine applies, the claim can be supported by acts that occurred outside the limitations period as long as at least one of the acts contributing to the continuing violation occurred within the limitations period. *Id.* at 117.

14

The continuing wrong doctrine is an exception to the general rule that a cause of action accrues as soon as the plaintiff has the right to sue. *Williams v. Blue Cross Blue Shield of N.C.,* 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003); *see also Marzec,* ___ N.C.App. at ___, 690 S.E.2d at 542 ("Under the continuing wrong doctrine, the statute of limitations does not start running `until the violative act ceases.'" (quoting *Babb v. Graham,* 190 N.C.App. 463, 481, 660 S.E.2d 626, 637 (2008)) (internal quotations marks omitted)). As the Seventh Circuit has explained, the continuing wrong doctrine is premised, at least in part, on the idea that where a cause of action arises from the cumulative nature or impact of *a series of acts* that occur over time, it can be difficult for the plaintiff to discern at any particular point during that time the wrongful and injurious nature of the defendant's conduct.

*Rodrigue v. Olin Emp. Credit Union,* 406 F.3d 434, 445 (7th Cir.2005); *cf. Williams,* 357 N.C. at 179, 581 S.E.2d at 423 (citing numerous federal opinions as persuasive in this area of law)

VI. **ARE GROUNDS OF RACIAL DISCRIMINATION AND RETALIATION RAISED UNDER 42 USC TITLE VII ADMINISTRATIVELY EXHAUSTED IF EXPLICITLY REFERENCED AND INCORPORATED DURING THE EEOC PROCEEDING?**

Plaintiff contends for the purpose of exhaustion that all claims are exhausted and that the full EEOC investigation record including but not limited to all communications and documents exchanged and gathered reflects Plaintiff's claims which will be made available during discovery proceedings. Plaintiff represents that the EEOC is in possession of his FOIL request but have not provided disclosure as of yet.

VII. **DOES DEFENDANTS CONDUCT SATISFY ELEMENTS FOR A CAUSE OF ACTION FOR FRAUD?**

A claim of fraud requires a false representation or concealment of material fact that is 1) reasonably calculated to deceive, 2) made with intent to deceive, 3) which does in fact deceive, 4) which is relied upon by the plaintiff, and 5) which results in damage to the plaintiff. *Pleasant Valley Promenade, L.P. v. Lechmere, Inc.,* 120 N.C.App. 650, 663, 464 S.E.2d 47, 57 (1995).

Failure to disclose the truth can be as much fraud as an affirmative false representation but is only actionable where the party remaining silent has a duty to disclose. *Everts v. Parkinson,* 147 N.C.App. 315, 321, 555 S.E.2d 667, 672 (2001). A duty to disclose may arise from a relationship of trust and confidence between the parties. *Setzer v. Old Republic Life Ins. Co.,* 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962). The duty may also arise when one party has information material to the second party but which the second party is unable to obtain. *See Everts,* 147 N.C.App. at 321, 555 S.E.2d at 672

North Carolina courts have held that "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell,* 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quoting *Brown v. Superior Court,* 34 Cal.2d 559, 212 P.2d 878, 881 (1949)).

In the present case, the fraud occurred in three forms and was facilitated by the defendants jointly.

First Plaintiff was charged with disciplanary violations he never committed and sanctioned.

Second, false misrepresentations were intentionally incorporated into Plaintiff's performance assessment to produce false classifications of "Detractor" and devalue his rating for the purpose of denying him merit, full bonus pay, promotional opportunity and damaging his reputation.

16

Third, the defendants fraudulently concealed by intentionally failing to disclose the exculpatory and mitigating evidence and documents in their possession during the EEOC investigation for the purpose of misleading and influencing the investigation to cover up culpability.

How the Supreme Court, Circuit Court or District Court has applied the legal Standard to identical or similar fact patterns

VIII. **<u>DOES DEFENDANTS CONDUCT SATISFY ELEMENTS FOR A CAUSE OF ACTION FOR WORKPLACE DEFAMATION?</u>**

 In the workplace, defamation can come in the form of: a) employee evaluations, b) disciplinary actions, c) employment references, d) overheard remarks, or e) written remarks in a memo. https://www.ojp.gov/ncjrs/virtual-library/abstracts/torts-workplace-defamation-emotional-distress-and-negligent-hiring.  To state a claim of **defamation**, defendant must plead sufficient facts to "show that [defendant] 1) caused injury to [Plaintiff] 2) by making false, defamatory statements 3) of or concerning [defendant] 4) that were published to a third person." <u>Bouvier v. Porter, 386 N.C. 1, 10, 900 S.E.2d 838, (2024)</u>.  Accusations of a lack of experience, *competence*, or *capacity* are not mere insults or **opinions**, but assertions one is *factually unfit for his duties*, and are actionable as defamatory statements. See, e.g., <u>Eshelman v. Puma Biotechnology, Inc., No. 7:16-CV-18-D, 2018 U.S. Dist. LEXIS 245812, 2018 WL 11411207, at *7 (E.D.N.C. Oct. 29, 2018)</u>, aff'd, <u>2 F.4th 276 (4th Cir. 2021)</u> ("[Plaintiff's] alleged lack of integrity is not a mere insult.") ***<u>Publication, in the legal sense, translates to communicated</u>*** **[\*23]** by the defendant to some person or persons other than the individual **defamed**. <u>Donovan v. Fiumara, 114 N.C. App. 524, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994)</u>. In the instant case, defendants Michael Glendenning, Patrick Tarry and James Fornabaio created false inputs to generate falsified business records to mis-classify Plaintiff as

17

incompetent, a Detractor and unable to solve problems or conduct assessments. These determinations were manipulated to construct a knowingly false narrative to harm Plaintiff in his professional reputation in the workplace and future employment and were totally contrary to the actual performance and contributions provided by Plaintiff on behalf of TOSHIBA. These false representations were then provided and communicated to other decision-making personnel for the purpose of improperly influencing their judgement about Plaintiff and were relied upon to Plaintiff's detriment. Decisions were then made about Plaintiff and his future with the company based upon these false representations. Plaintiff was not aware of the full extent of these acts.

IX. **<u>DOES DEFENDANTS CONDUCT SATISFY ELEMENTS FOR A CAUSE OF ACTION FOR OBSTRUCTION?</u>**

North Carolina recognizes a common law claim for obstruction of justice. In order to state a claim for common law obstruction of justice, a plaintiff must allege "any action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy." Blackburn v. Carbone, 208 N.C. App. 519, 703 S.E.2d 788, 795 (N.C. Ct. App. 2010). The claim has three elements: "(1) performing any act (2) which prevents, obstructs, impedes or hinders (3) public or legal justice." Jackson v. Blue Dolphin Commc'ns of N.C., 359 F. Supp. 2d 442, 458 (W.D.N.C. 2004). "The common law offense of obstructing justice may take a variety of forms." Henry v. Deen, 310 N.C. 75, 310 S.E.2d 326, 334 (N.C. 1984) (destroying evidence and creating false documents). Second, false misrepresentations were intentionally incorporated into Plaintiff's performance assessment to produce false classifications of "Detractor" and devalue his rating for the purpose of denying him merit, full bonus pay, promotional opportunity and damaging his reputation.

Third, the defendants fraudulently concealed by intentionally failing to disclose the exculpatory and mitigating evidence and documents in their possession during the EEOC investigation for the purpose of misleading and influencing the investigation to cover up culpability.

## X. **DOES INTRA CORPORATE IMMUNITY FAIL WEN DFENDANTS ACTIONS ARE OUTSIDE SCOPE OF THEIR EMPLOYMENT.** *ePlus Tech.*, **313 F.3d at 179?**

To prevail on a claim for civil conspiracy **[*53]** in North Carolina, a plaintiff must prove a prima facie claim by showing: "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 666 S.E.2d 107, 115 (N.C. 2008). A "conspiracy" is defined as "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." *Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 783, 784 (N.C. 1951).

A plaintiff may state a conspiracy claim where the agent's acts were not authorized **[**25]** by the corporation. "An exception to the doctrine of intracorporate immunity exists if the agent of the corporation has an *'independent personal stake* in achieving the corporation's illegal objective.'" Garlock, 2000 NCBC LEXIS 6, 2000 WL 33914616, at *6 (quoting Buschi, 775 F.2d at 1252).

"There are two essential ingredients in the principal-agent relationship: (1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." Holcomb v. Colonial Assocs., L.L.C., 358 N.C. 501, 509, 597 S.E.2d 710, 716 (2004).

19

Clearly established unlawful acts (i.e. Per Se Statutory or Criminal Violations) do not qualify as "***acting in the normal course of their duties***". Managerial authority ends where statutory prohibitions begin.

As the Court in *Cole v. University of Hartford*, 391 F. Supp. 888, 893 (D.Conn. 1975) put it: The plaintiff must allege that they acted ***other than*** in the normal course of their corporate duties."

**First**, it is generally inapplicable "where a co-conspirator possesses a personal stake independent of his relationship to the corporation." *ePlus Tech.*, 313 F.3d at 179; *see also Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). **Second**, a plaintiff may state a conspiracy claim where the agent's acts were not authorized [**25] by the corporation. *Buschi, 775 F.2d at 1252-53*.

## XI. DOES DEFENDANTS STEVE MENSCH, JAMES FORNABAIO AND AMANDA STEVENS CONDUCT SATISFY BAD FAITH OR GROSS NEGLIGENCE EXCEPTION FOR CAUSE OF ACTION FOR SUPERVISORY LIABILITY?

Thus, under North Carolina law, a director or an officer can be held liable for ordinary negligence.

Officer and director liability for ordinary negligence is constrained by the business judgment rule. While the Supreme Court of North Carolina has not ruled on the issue, the North Carolina Court of Appeals has recognized that § 55-8-30(d) "has been interpreted as codifying 312*312 the common law theory of the business judgment rule." *Jackson v. Marshall,* 140 N.C.App. 504, 537 S.E.2d 232, 236 (2000). *State ex rel. Long v. ILA Corp.,* 132 N.C.App. 587, 513 S.E.2d 812, 821-22 (1999) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*

20

§ 14.06, at 281 (5th ed.1995)) Given the structure of the business judgment rule, the initial presumption can be rebutted with evidence showing that the Officer Appellees: (1) *did not avail themselves of all* *material and reasonably available information* *(i.e., they did not act on an informed basis)*; (2) *acted in* *bad faith,* *with a conflict of interest,* or *disloyalty;* or (3) *did not honestly believe that they were* *acting in the best interest of* *corporation.*

**Slakan v. Porter, 737 F. 2d 368 - Court of Appeals, 4th Circuit 1984**

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests Plaintiff be afforded the opportunity to proceed further to seek redress for Defendants' repeated and willful violations of Plaintiff's aforementioned rights.

Respectfully,

3/31/2025

Casim Noble
3116 Glenlee Drive
Durham, N.C. 27704

21

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 1-24-cv-01084-UA-JEP

| | | |
|---|---|---|
| CASIM NOBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **WORD COUNT CERTIFICATION** |
| v. | ) | |
| | ) | |
| | ) | |
| TOSHIBA GLOBAL COMMERCE | ) | |
| SOLUTIONS, INC., STEVEN MENSCH, | ) | |
| JAMES FORNABIO, MICHAEL | ) | |
| GLENDENNING, SCOTT ENKE, | ) | |
| PATRICK TARRY, AMANDA | ) | |
| STEVENS, and BOB HUNSINGER, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The undersigned hereby certifies that this MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE TO MOTION TO DISMISS does not exceed 6, 250 words and contains 6, 001 words based on the word count generated by word processing software pursuant to Local Civil Rule 7.3 (d).

Respectfully submitted this 31st day of March, 2025.

Casim Noble
3116 Genlee Drive
Durham, NC 27704

22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 1-24-cv-01084-UA-JEP

CASIM NOBLE,                          )
                                      )
Plaintiff,                            )
                                      )
                                      )        **CERTIFICATE OF SERVICE**
v.                                    )
                                      )
                                      )
TOSHIBA GLOBAL COMMERCE               )
SOLUTIONS, INC., STEVEN MENSCH,       )
JAMES FORNABIO, MICHAEL               )
GLENDENNING, SCOTT ENKE,              )
PATRICK TARRY, AMANDA                 )
STEVENS, and BOB HUNSINGER,           )
                                      )
                                      )
Defendants.                           )
_____ )

I hereby certify that on March 31, 2025, I personally delivered to the Clerk of the Court Plaintiffs

Response to Defendants Motion to Dismiss and that the undersigned has served the foregoing

upon all parties to this cause in accordance with the Federal Rules of Civil Procedure by

depositing a copy thereof, via First Class mail, postage paid in the united States mail, addressed

to :

Tatiana Terry, Esq (N.C. Bar No. 55194). And Bob Sar, Esq. (N.C. Bar No 55194)

OGLETREE, DEAKINS, NASH
SMOAK & STEWART

23

CASIM Noble
3116 Gourlee Drive, Durham, NC
27704