UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CASIM NOBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24CV1084 |
| | ) | |
| TOSHIBA GLOBAL COMMERCE | ) | |
| SOLUTIONS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, an employee of Toshiba Global Commerce Solutions, Inc. ("Toshiba"), brings this suit against Toshiba and several of its employees and officers. In the Complaint, Plaintiff brings claims against Toshiba in Count One for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina's Equal Employment Practices Act, N.C.G.S. § 143-422.2, and in Count Two for retaliation in violation of Title VII. Plaintiff brings claims against the individual employees and officers in Count Three for "defamation, fraud and conspiracy to cover up and obstruct the EEOC investigation," and in Count Four for "Supervisory Liability" based on alleged failure to train, failure to enforce, and failure to investigate. This matter is now before the Court on Defendants' Motion to Dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also filed a Motion to Strike Plaintiff's sur-reply to the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set out below, the Motion to Dismiss should be granted as to the state

law claims, which are asserted against the individual employees and officers, but denied as to the Title VII and § 1981 claims against Toshiba.

## I.     BACKGROUND AND PROCEDURAL HISTORY

According to the Complaint, Plaintiff Casim Noble is a Black/African American man who began working for Toshiba in November 2019.  According to Plaintiff, he was originally hired as a Business Operations Specialist and Business Analyst for facility operations, a position that included leadership and delegation authority, but in 2021 his manager, Defendant Glendenning, reassigned him to a role that changed the conditions, roles, and responsibilities of his employment.  (Compl. ¶¶ 26–27.)  Plaintiff alleges that although he received a pay increase with his reassignment to the new position, it stripped him from a formal leadership role within Toshiba's operational structure, altered his function and scope as related to facility operations, altered his authority and the track of his role within the organization, and concealed his role in the conception of business insights and metrics.  (Compl. ¶¶ 28, 32.) Plaintiff alleges that white employees were not reassigned to roles in the same manner he was, rather they were allowed to voluntarily apply and afforded the opportunity to discuss the nature and scope of different positions prior to being hired in a new position, whereas he, a Black employee, was not given any forewarning of his reassignment and was not given an actual job description of his new position until over a year after he was reassigned.  (Compl. ¶¶ 32–33.)  Plaintiff alleges that after he was removed from his position, Glendenning changed the job requirements to include less qualifications than when Plaintiff was hired and then hired a white employee that had less experience than Plaintiff to fill the position.  (Compl. ¶¶ 36, 38.)

2

Plaintiff further alleges that in October 2022, he was denied the opportunity to participate in a Kaizen professional training and development exercise despite being the most experienced and accomplished member in his department, but a newly hired white employee was selected to participate. (Compl. ¶ 40.) Plaintiff alleges that he was excluded from the training event because of his race and that Defendants falsified documents to make it appear as if he attended the event. (Compl. ¶¶ 48–49.)

Plaintiff also alleges that in November 2022, he was asked to complete work outside of the scope of his duties with regards to a Walgreens account, in that he was tasked with managing and reconciling purchase orders he did not create, which was an administrative burden and increased his work volume. (Compl. ¶¶ 50–66.) Plaintiff alleges that no white employee had been subjected to the same demand. (Compl. ¶ 67.)

Plaintiff alleges that in April 2023, he expressed to Defendant Glendenning that he felt as if he was being "harassed" and that there was fraud and misconduct occurring at the workplace, and that two weeks later, three days before his performance review was due, Defendant Glendenning called him into the office to delete a significant number of his goals from the performance review system without explanation, despite previously approving the goals. (Compl. ¶¶ 72–74.) Plaintiff subsequently emailed Defendant Glendenning, Senior Human Resources representative Patrick Tarry, Director Scot Enke, and VIP of Worldwide Operations Steven Mensch to complain about Glendenning's directive to alter his performance review goal. (Compl. ¶ 82.) Plaintiff alleges that despite receiving an Award of Distinction for his work in 2022, on April 27, 2023, Defendant Glendenning gave him a 2022

3

end of the year score of 3, which he alleges was a deliberate undervaluation of his performance. (Compl. ¶ 96.)

According to the Complaint, Plaintiff was excluded from meetings with staff and clients despite his experience and skills. Plaintiff alleges that he was excluded from a meeting that he was asked to prepare materials for, but a less experienced white employee was permitted to attend, and that his bi-weekly one-on-one meetings with his supervisor, Defendant Glendenning, were cancelled without reason, which affected his performance rating and classification within the company. (Compl. ¶¶ 105, 109, 112, 115.) According to the Complaint, in June 2023 Plaintiff assisted with creating a workflow for a client and did not receive credit for the work he put into the finished product that was presented to the client. (Compl. ¶¶ 120–124.) Plaintiff further alleges that in September 2023, he was permitted to participate in an interdepartmental Kaizen brainstorming event, but he was denied the opportunity to participate in subsequent sequels of the event, despite records being falsified to make it appear as if he had been included. (Compl. ¶ 131.)

On September 11, 2023, Plaintiff filed a charge with the EEOC and alleged that from March 2023 until the date of filing, he was discriminated against on the basis of race and faced retaliation for complaining to his employer about discrimination he faced.[1] Plaintiff alleges

[1] Defendants submitted the two EEOC charges filed by Plaintiff and referenced in the Complaint. In ruling upon a 12(b)(6) motion, the Court may consider certain documents without converting the motion into a motion for summary judgment. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (explaining that the Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic."); see also Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (explaining that a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."). A document is not integral to the complaint when the "claims do not turn on, nor are . . . otherwise based on" the document. Goines, 822 F.3d at 166 (finding that the police incident report was not integral to the complaint where "the complaint included a few quotes from and references to the" report but the claims did not turn on and were not otherwise based on the statements in the

that his September 2023 charge was still open during the time his performance review was being finalized and that in an attempt to circumvent the EEOC investigation, Defendant Glendenning intentionally stalled completing his performance review and completed it after the corporate deadline using undefined criteria, and that Defendant Glendenning fabricated accusations about Plaintiff's conduct. (Compl. ¶¶ 206–217.) Plaintiff alleges that when he protested, Defendant Glendenning stated that he was "going to regret reporting to the EEOC" and the "EEOC can't do anything." (Compl. ¶ 225.)

On September 12, 2023, the day after the EEOC charge was filed, Plaintiff received a Final Warning disciplinary report for sending emails to Toshiba's CEO on three occasions. (Compl. ¶ 140.) Plaintiff alleges that white employees were encouraged to copy the CEO on emails, but he was reprimanded. Plaintiff additionally alleges that the disciplinary action was in retaliation for him reporting Mr. Glendenning's conduct and treatment of him to upper management.

Plaintiff filed a second charge with the EEOC on January 18, 2024, alleging discrimination based on race and retaliation. His January 2024 charge referenced the prior EEOC Charge from September 2023, and alleged continuing race-based discrimination since March 2023 and retaliation for his filing of the September 2023 EEOC Charge. Plaintiff later amended his January 2024 EEOC Charge on March 8, 2024, May 6, 2024, and July 14, 2024.

In April 2024, while the second EEOC charge was pending, Plaintiff received a 2023 Year End Performance rating of 2.8, below standards, and as a result was "denied bonus pay

---

report). In the instant matter, Plaintiff alleges retaliation in part based on his filings with the EEOC, and repeatedly refers to and incorporates the EEOC charges. In addition, neither party has challenged the authenticity of the EEOC charges or objected to their consideration on the Motion to Dismiss.

5

he would have otherwise been entitled to." (Compl. ¶ 229, ¶ 244.) Plaintiff alleges that this rating was based on false accusations motivated by discrimination and retaliation. Plaintiff alleges that he is now classified as a "detractor" within Toshiba which means that he is ineligible for promotion and raises, and that he is subject to demotion and termination. In addition, the Complaint alleges that Plaintiff was subsequently placed on disciplinary probation on June 13, 2024, requiring him to meet with Defendant Glendenning every two weeks for a determination of whether he has violated any company rules, policy or procedures, which would then result in immediate termination. (Compl. ¶ 250, ¶ 251.) Plaintiff alleges that the implementation of the disciplinary probation was in retaliation for the May 6, 2024 amendment to his EEOC Charge, which added claims related to the April 2024 Year End Performance Rating. (Compl. ¶ 264.) Plaintiff was issued a right to sue letter for his second EEOC charge on September 20, 2024, and filed the instant matter on December 19, 2024.

Defendants Toshiba, Steven Mensch, James Fornabaio, Michael Glendenning, Scott Enke, Patrick Tarry, Amanda Stevens, and Bob Husinger (collectively Defendants") move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of the Motion to Dismiss, Defendants contend that (1) Plaintiff cannot proceed on Title VII allegations that were not timely presented and included in the second EEOC charge; (2) Plaintiff cannot proceed on the Title VII and § 1981 claims because he has not asserted any "adverse action"; and (3) Plaintiff has failed to state any claims under state law. The Court considers each of these contentions below.

## II.    STANDARD

Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678. Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

III.   DISCUSSION

A.   Timeliness of Plaintiff's EEOC Charge and Scope of Allegations

Title VII requires a plaintiff to file his threshold charge of discrimination with the EEOC within 180 days after the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); EEOC v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988).[2] An untimely-filed charge is not a jurisdictional bar but rather is "like a statute of limitations, . . . subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

The statute of limitations serves as an affirmative defense that must be proven by a defendant by a preponderance of the evidence. Fed. R. Civ. P. 8(c)(1); Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 664 (M.D.N.C. 2013). A court can reach the merits of a limitations issue at the Rule 12(b)(6) stage only "if all facts necessary to the [statute of limitations] defense 'clearly appear[ ] on the face of the complaint.'" Stack, 979 F. Supp. 2d at 664 (alteration in original) (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)). Dismissal of a claim as time-barred at the motion to dismiss stage occurs in "relatively rare circumstances." Id.

In the present Motion to Dismiss, Defendants argue that Plaintiff may only seek redress under Title VII for incidents that occurred after July 22, 2023, 180 days prior to his second EEOC Charge which he filed on January 18, 2024, and that any allegations that relate to conduct before July 22, 2023 are time-barred. (Defs.' Br. [Doc. #17] at 3, 8.)   Defendants

---

[2] In limited circumstances not relevant here that period of time is extended to 300 days. 42 U.S.C. § 2000e-5(e)(1); Com. Off. Prods., 486 U.S. at 111.

also contend that allegations relating to conduct occurring after May 6, 2024, should be dismissed as well because they exceed the scope of the EEOC charge. (Defs.' Br. at 9.)

Plaintiff contends that the continuing violation doctrine applies and serves as an exception to the general rule that dictates that an employee must sue within the typical 180 days requirement, and that under this doctrine his claims for conduct before July 22, 2023, are saved from being time-barred. Plaintiff also argues that the statute of limitations for his first EEOC Charge (the September 2023 Charge) was tolled. (Pl.'s Resp. [Doc. # 21] at 14.)

However, the Court need not resolve these issues or attempt to decipher through the EEOC charges to determine which specific contentions may be time-barred at this preliminary stage, since it is undisputed that at least some of Plaintiff's claims are not time barred, particularly his claims related to his December 2023 performance review, his April 2024 performance review, and his June 2024 disciplinary probation. (See Defs.' Br. at 5.) Those claims were all raised in the second EEOC charge, as amended July 14, 2024 (Defs.' Exhibits [Doc. #17-2 at 13]), and relate to events after July 22, 2023 (within 180 days prior to the second EEOC charge), and Defendants do not contend that the claims related to those incidents are barred. Moreover, even if any allegations prior to July 22, 2023, were time-barred, they can be relevant as background evidence in support of Plaintiff's Title VII claim. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (explaining that time-barred "discriminatory allegation[s] may still constitute relevant background evidence for valid claims.") (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)). As noted above, it is rare to attempt to resolve statute of limitations issues, especially fact-intensive ones, at the Motion to Dismiss stage, and the Complaint on its face is not clear as to which, if any,

9

allegations related to the two EEOC charges are time barred and whether equitable tolling should apply. As such, the Court need not reach a determination of whether certain allegations are barred by the statute of limitations or the scope of what allegations may be presented at this point in litigation and such a determination is better determined after discovery has been completed.[3]

B.      Sufficiency of Plaintiff's Allegations of Adverse Action

The Supreme Court has held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 515 (2002). Instead, the "the ordinary rules for assessing the sufficiency of a complaint apply." Id. at 511. Under the ordinary rules that apply, as stated above, a plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (2009); see also Woods v. City of Greensboro, 855 F.3d 639 (4th Cir. 2017).

Title VII makes it "an unlawful employment practice for an employer . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . or national origin." 42

---

[3] In their Memorandum in support of the Motion to Dismiss, Defendants suggest the Plaintiff's "claim for racial discrimination based on his Native American and 'mixed-race' status must be dismissed because his second EEOC Charge does not allege discrimination against that status." (Defs.' Br. at 11.) The Court does not understand Plaintiff to be setting forth allegations of discrimination based on a mixed-race theory, rather Plaintiff referenced his Native American heritage in the context of his "minority status as [a] black American."

U.S.C. § 2000e-2(a).[4] An employer will be held liable for racial or national origin discrimination if "a protected characteristic [is] a 'motivating factor' in an employment decision." EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015) (quoting 42 U.S.C. § 2000e-2(m)). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). "An employee need not allege specific facts to make out a prima facie case." Jefferies v. UNC Reg'l Physicians Pediatrics, 320 F. Supp. 3d 757, 760 (M.D.N.C. 2018) (citing Swierkiewicz, 534 U.S. at 508 (2002)). He must, however, allege sufficient facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

As the basis for the present Motion to Dismiss, Defendants contend that Plaintiff has failed to allege the third element, a sufficient adverse employment action, to set forth a claim for discrimination. In support of dismissal, Defendants argue that the Complaint fails to adequately allege race discrimination under both Title VII and § 1981 because it fails to allege any "legally sufficient adverse employment action." (Defs.' Br. at 11.) Plaintiff believes that his reclassification within Toshiba, negative performance evaluations, and exclusion from certain events and meetings amounted to unlawful discrimination based on race. Defendants contend that performance review, disciplinary reports, and exclusion from work activities,

---

[4] Plaintiff asserts identical claims under 42 U.S.C. § 1981. "Most [42 U.S.C] § 1981 actions involve employment discrimination claims, and courts analyze such cases employing the same statutory scheme used in cases brought under Title VII." Baltimore-Clark v. Kinko's Inc., 270 F. Supp. 2d 695, 698–99 (D. Md. 2003) (citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000); Gairola v. Commonwealth of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285–86 (4th Cir. 1985)).

11

events, and tasks, are not adverse actions that give rise to a claim for discrimination. (Defs.' Br. at 12–14.)

It is true that Plaintiff's Complaint includes a litany of grievances that would not rise to the level of an adverse employment action. Cf. James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) ("In sum, an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action."), abrogated on other grounds by Muldrow v. City of St. Louis, Missouri, 601 U.S. 346 (2024). However, at this preliminary stage, it appears that at least some of the contentions plausibly allege an adverse employment action. Plaintiff's Complaint includes discrete acts allegedly based on his race, with specific reference to actions by his immediate supervisor, Defendant Glendenning. For example, Plaintiff alleges that he was reassigned to a different role in Toshiba that negatively affected his career trajectory, that he was removed from his leadership position, that he received a new job description a year later that was a "demotion in substance" (Compl. ¶¶ 28–35), and that he was excluded from participation in an event which he alleges was a "promotional opportunity," despite being the most experienced member of his department, (Compl. ¶¶ 40, 43, 45). Plaintiff alleges that both of these incidents happened due to his race.

Even more importantly, Plaintiff has raised specific actions that are undisputedly timely, including the December 2023 and April 2024 performance reviews and the June 2024 disciplinary probation. While Defendants argue that Plaintiff's allegations regarding his performance reviews and disciplinary reports were insufficient to allege an adverse action, a poor performance evaluation is actionable "where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's

employment." <u>Booz-Allen & Hamilton</u>, 368 F.3d at 377. Here, Plaintiff specifically alleges that as a result of the December 2023 and April 2024 performance reviews, he was harmed "professionally and financially as he was denied bonus pay he would have otherwise been entitled to." (Compl. ¶ 244.) <u>See</u> <u>Russell v. Principi</u>, 257 F.3d 815, 819 (D.C. Cir. 2001) ("In contrast, a bonus is a tangible, quantifiable award, more analogous to one's salary or to a benefit of one's employment than to a performance evaluation."); <u>Dortch v. Cellco P'ship</u>, 770 F. App'x 643, 647 (4th Cir. May 16, 2019) ("[a]ssuming that [a] lesser bonus constitutes an adverse employment action" and citing <u>Russell v. Principi</u>). In addition, Plaintiff alleges that in June 2024 he was placed on disciplinary probation, exposing him to immediate termination if he violated any rule, policy or procedure. (Compl. ¶¶ 250–251.) These contentions are reflected in the second EEOC charge, which contends that "[a]s a result of the substandard employment rating I was denied a bonus that was paid to employees with satisfactory or higher performance reviews" and that the classification made him "ineligible for promotion, ineligible for raises, subject to demotion and subject to termination." (Defs.' Exhibits [Doc. #17-2 at 14].)[5]

---

[5] Notably, to adequately allege an adverse employment action, a complaining employee need not show that the incurred harm was significant, serious, or substantial. <u>Muldrow v. City of St. Louis, Missouri</u>, 601 U.S. 346, 355 (2024). In <u>Muldrow</u>, the Supreme Court explained that

> 'Discriminate against' means treat worse . . . [b]ut neither that phrase nor any other says anything about how much worse. There is nothing in the provision to distinguish . . . between transfers causing significant disadvantages and transfers causing not-so-significant ones. And there is nothing to otherwise establish an elevated threshold of harm. To demand 'significance' is to add words—and significant words, as it were—to the statute Congress enacted. It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something more of her than the law as written.

<u>Id.</u>

Moreover, with respect to Plaintiff's claim for retaliation, Title VII's anti-retaliation provision imposes liability on an employer who discriminates against an employee "because he has opposed any practice made an unlawful employment practice by [42 U.S.C. § 2000e–3(a)], or because he had made a charge, testified, assisted, or participated in any manner in an investigation or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); see also DeMasters v. Carilon Clinic, 796 F.3d 409, 416–17 (4th Cir. 2015) ("Title VII forbids employment discrimination based on 'race, color, religion, sex, or national origin,' 42 U.S.C. § 2000e-2(a), and its anti-retaliation provision serves to prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." (internal quotation omitted)). The Supreme Court has held that an "adverse action" for a retaliation suit requires only that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68–69 (2006) (internal quotation omitted) (noting that, for example, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."); Darveau v. Detecon, Inc., 515 F.3d 334, 341–42 (4th Cir. 2008).

Here, Plaintiff alleges that with respect to his December 13, 2023 performance review following his initial EEOC charge, his supervisor Defendant Glendenning used an undefined performance criteria and false allegations in order to reduce his performance rating and that

when Plaintiff protested his performance review, Glendenning expressly stated that Plaintiff was "going to regret reporting to the EEOC," and that "the EEOC can't do anything." (Compl. ¶¶ 204–08; 225.) As noted above, the Complaint alleges that this performance review and his subsequent April 2024 performance review after his second EEOC charge harmed him professionally and financially, including by precluding bonus pay he otherwise would have received. Plaintiff goes on to allege that he was placed on disciplinary probation in retaliation for his amendment to his second EEOC Charge. (Compl. ¶¶ 249, 250, 264–266.) It is plausible that a low performance review that resulted in decreased compensation and placement on disciplinary probation, if imposed in retaliation for filing an EEOC Charge as Plaintiff alleges, would dissuade a reasonable worker from making or supporting a charge of discrimination.[6]

Whether Plaintiff's claims of an adverse action are ultimately substantiated will be addressed during discovery and more appropriately considered on a motion for summary judgment. Indeed, in addition to determining whether Plaintiff has presented evidence of an actual adverse action, the Court can also consider what appears likely to be the real dispute, which is whether Toshiba had other legitimate, non-discriminatory, non-retaliatory reasons for taking the actions that it did. Those issues are not before the Court on the present Motion to Dismiss. At this stage, the allegations in the Complaint must be taken as true, and Plaintiff has sufficiently alleged an adverse action to support a claim for discrimination based on race

---

[6] Given that Plaintiff has sufficiently alleged an adverse action that was timely raised in the second EEOC charge, the Court need not determine at this preliminary stage if there are other adverse actions that would support a retaliation claim. These issues can be addressed further at summary judgment, after further development of the record.

and retaliation in violation of Title VII and § 1981. As such, Defendants' request to dismiss Plaintiff's race discrimination claim and retaliation claims in Count One and Two for failure to allege an adverse action should be denied.[7]

C.       Count Three State Law Claims

In Count Three, Plaintiff alleges that the individual Defendants are liable for "defamation, fraud, and conspiracy to cover up and obstruct the EEOC investigation after the fact." (Compl. ¶ 459.) The Court will address each of these claims in turn.

1.       Defamation

With respect to defamation, Plaintiff raises a claim of defamation against individual defendants James Fornabaio, Steven Mensch, Scott Enke, Amanda Stevens, Michael Glendenning, and Patrick Tarry. Defendants contend that Plaintiff's claim for defamation should be dismissed because recovery is barred by the statute of limitations. Defendants also argue that even if the claim were not barred by the statute of limitations, Plaintiff has failed to state a claim for defamation because the statements referenced are opinions, and because no

---

[7] The Court notes that in his claim in Count One for race discrimination in violation of Title VII and § 1981, Plaintiff also references the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C.G.S. § 143-422.2. (Compl. ¶ 455). However, NCEEPA does not create a private right of action. McNeil v. Scotland Cnty., 213 F. Supp. 2d 559, 570 (M.D.N.C.), aff'd, 53 F. App'x 242 (4th Cir. 2002). "While the statute does not create a private right of action, a plaintiff can bring a common law claim for wrongful discharge based on a violation of the public policy expressed in N.C. Gen. Stat. § 143-422.2." Leonard v. Wake Forest Univ., 877 F. Supp. 2d 369, 372 (M.D.N.C. 2012) (internal citation omitted); see also Royster v. Costco Wholesale Corp., 378 F. Supp. 2d 595, 608 (M.D.N.C. 2005). Here, however, Plaintiff does not assert a wrongful discharge claim or other recognized state law cause of action. Thus, to the extent Plaintiff is seeking to set forth a discrimination claim based on race, NCEEPA does not provide a separate cause of action, but those claims are moving forward under Title VII and § 1981.

16

third-party publication exists, and because any statement made to the EEOC during the course of its investigation is privileged. (Defs.' Br. at 16–20.)

Under North Carolina law, to state a claim for defamation a plaintiff is required to allege that "the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Cannon v. Peck, 36 F.4th 547, 559 (4th Cir. 2022) (quoting Griffin v. Holden, 636 S.E.2d 298, 302 (N.C. Ct. App. 2006)). Libel and slander are the two forms of defamation; "libel is written while slander is oral." Id. (quoting Tallent v. Blake, 291 S.E.2d 336, 338 (N.C. Ct. App. 1982)). In the Complaint, Plaintiff has identified various allegedly defamatory statements involving statements to HR, statements in employment reviews, communications between Toshiba employees, and statements made by Toshiba employees during the course of the EEOC investigation.

First, Defendants move to dismiss portions of Plaintiff's defamation claim as being time-barred under state law. Under North Carolina law, defamation is subject to a one-year statute of limitations period. N.C. Gen. Stat. § 1-54(3). Thus, Plaintiff may not recover for any alleged defamation occurring before December 19, 2023, one year prior to the filing of his Complaint. See Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) ("To succeed on a statute-of-limitations defense at [the motion to dismiss] stage, all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" (quoting Goodman, 494 F.3d at 464)). To the extent Plaintiff relies on allegedly defamatory statements made before December 13, 2023, to support his defamation claim(s), they are time-barred.

17

In addition, there must be a publication to a third party to support a defamation claim, which requires a publication outside of the employees of a single employer.

> In the employment context, agents and employees of a single employer are not considered third persons to the employer or to each other. <u>Satterfield v. McLellan Stores</u>, 215 N.C. 582 (1939). Therefore no publication occurs when statements are only communicated between officers, employees and agents of a single employer. In <u>Satterfield</u>, the North Carolina Supreme Court held there was no publication for defamation purposes when a company's manager and stenographer communicated regarding the plaintiff's misconduct. Because the manager and stenographer were agents and employees of the same employer, they were not "third persons within the contemplation of law with respect to publication of a libelous matter."

<u>Reikowski v. Int'l Innovation Co., USA, Inc.</u>, No. 3:12CV854, 2013 WL 526489 (W.D.N.C. Feb. 11, 2013). Other than statements to the EEOC, discussed below, Plaintiff has not alleged a specific statement, and the time and place of the communication, made to a third party outside of Toshiba. Statements placed in his performance review, or to others in the workplace, not alleged to have been communicated to any third-party, would not establish a basis for a defamation claim.

Finally, the Court notes that it appears that the remaining statements of which Plaintiff complains are related to statements made to the EEOC during the EEOC investigation. "North Carolina courts recognize an absolute privilege for relevant statements made in the course of judicial proceedings against all civil claims . . . 'based upon statements which [plaintiff] claims are false, fraudulent, or misleading.'" <u>Edwards v. Parrish Tire Co.</u>, No. 1:18CV811, 2019 WL 4246671, at *3 (M.D.N.C. Sept. 6, 2019) (citing <u>McManaway v. LDS Family Servs.</u>, No. COA09-889, 208 N.C. App. 569 (table), 2010 WL 5420148, at *12–13 (N.C. Ct. App. Dec. 21, 2010)). "North Carolina courts have adopted a broad definition of 'judicial proceedings,' and have construed the term to cover quasi-judicial proceedings where public

18

administrative offices investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action." <u>Lewis v. Durham Wellness & Fitness, Inc.</u>, No. 1:17CV217, 2017 WL 4124278, at *5 (M.D.N.C. Sept. 15, 2017) (citation and internal quotation omitted). The privilege is applicable where (1) the statements at issue are made in the course of a judicial or quasi-judicial proceeding; (2) the statement is sufficiently relevant to the judicial proceeding; and (3) the relevant claim is based upon the statements which the plaintiff claims are false, fraudulent, or misleading. <u>Edwards</u>, 2019 WL 4246671, at *3. Here, the Complaint makes clear that the remaining statements Plaintiff references relate to statements that were made during the EEOC investigation that the Plaintiff claims were false, fraudulent, and/or misleading. To the extent Plaintiff attempts to bring claims for defamation related to statements made during the EEOC investigation, those claims are protected by absolute privilege and should be dismissed.

      2.     Fraud

Plaintiff also contends that conduct by his supervisors and other Toshiba employees is actionable as fraud. Under North Carolina Law, to state a claim for fraud, a plaintiff must allege, "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." <u>Ragsdale v. Kennedy</u>, 286 N.C. 130, 138 (1974). A fraud claim ordinarily also requires proof that the plaintiff relied on the false representation by the defendant. <u>See e.g.</u>, <u>Forbis v. Neal</u>, 361 N.C. 519, 527 (2007). Plaintiff has not alleged any facts to support a claim for fraud. To the extent Plaintiff claims that statements that were made during the EEOC investigation constituted fraud, such claims should be dismissed for

19

the same reasons that the claims for defamation are dismissed, those statements are privileged as they were made in the course of a quasi-judicial proceeding. Plaintiff's claim for fraud should be dismissed.

### 3. Obstruction of Justice

To the extent that Plaintiff attempts to raise a common law claim for obstruction of justice based on statements made during the EEOC investigation, for the same reasons set out above, any such claim should be dismissed. As indicated above, North Carolina courts recognize an absolute privilege for relevant statements made in the course of a judicial proceeding. Thus, to the extent Plaintiff's obstruction claim rests upon statements made during the EEOC investigation, the claim must be dismissed because Defendants' statements to the EEOC meet the requirements of absolute privilege. First, the statements were made during a quasi-judicial proceeding because they were made to the EEOC during an EEOC investigation. See Clausell v. Bayer Corp., No. 5:15-CV-50-BO, 2015 WL 5146704, at *8 (E.D.N.C. Sept. 1, 2015) (holding that an EEOC investigation is a quasi-judicial proceeding in which the absolute privilege applies). Second, Defendants' statements were made in response to the EEOC investigation, and thus were relevant to the proceedings. See Jones v. Coward, 193 N.C. App. 231, 233 (2008) (defining relevance). Third, Plaintiff's obstruction of justice claim is based on the allegation that Defendant made false statements to the EEOC. See McManaway, 2010 WL 5420148, at *12–13 (dismissing plaintiff's obstruction of justice claim based on absolute privilege where the alleged false statements of the defendants were made during a judicial proceeding). Thus, Plaintiff's claim for obstruction of justice related to

20

statements made to EEOC officials during the investigation of his EEOC charges should be dismissed.

### 4. Civil Conspiracy

Plaintiff alleges that "Defendants James Fornabaio, Steven Mensch, Scott Enke, Amanda Stevens, Michael Glendenning and Patrick Tarry are liable to him for defamation, fraud and conspiracy to cover up and obstruct the EEOC investigation." (Compl. ¶ 459.) In the Motion to Dismiss, Defendants contend that the Court should dismiss Plaintiff's civil conspiracy claim under the intracorporate conspiracy doctrine, since the alleged conspiracy is based on acts taken by employees within a corporation. (Defs.' Br. at 21.)

"The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Piraino Bros., LLC v. Atl. Fin. Grp., Inc., 211 N.C. App. 343, 350 (2011); Henry v. Deen, 310 N.C. 75, 87 (1984)). However, "[i]t is well established that there is not a separate civil action for civil conspiracy in North Carolina. Instead, civil conspiracy is premised on the underlying act." Piraino Bros., 211 N.C. App. at 350 (citations and quotations omitted). Thus, "[a] civil conspiracy claim must be based on an adequately pled underlying claim." USA Trouser, S.A. de C.V. v. Williams, 258 N.C. App. 192, 201 (2018). Here, for the reasons set out above, Plaintiff has failed to allege any underlying state law claims, so he cannot assert a separate action for civil conspiracy.

Moreover, "[t]he intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." Painter's

21

Mill Grille, LLC v. Brown, 716 F.3d 342, 352 (4th Cir. 2013); Seguro-Suarez v. Key Risk Ins. Co., 261 N.C. App. 200, 218 (2018) ("[A]n allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself[,] and is therefore insufficient to establish a claim for civil conspiracy." (internal quotation omitted)). Here, Plaintiff alleges that each Defendant is an employee or agent of Toshiba, and a corporation cannot conspire with its own employees or agents.

For all of these reasons, Plaintiff's claim for civil conspiracy should be dismissed.

D.     Count Four Claim for Supervisory Liability

In Count Four, Plaintiff brings a claim against all individual Defendants, except Bob Hunsinger, for "Supervisory Liability for Failure to Train, Failure to Enforce and Failure to Investigate unlawful conduct of subordinates." (Compl. ¶ 461.) Plaintiff has not cited any statutory or common law basis for his claim of supervisory liability. Ordinarily, "supervisory liability" is a doctrine considered in the context of a civil rights claims under 42 U.S.C. § 1983, which would not apply here. Defendants have moved to dismiss this claim, contending that Plaintiff cannot recover under a theory of supervisory liability against individual Defendants in a Title VII claim, because they are not an employer under the statute. (Defs.' Br. at 21.)

To the extent Plaintiff attempts to bring a claim for a Title VII violation against individually named Defendants, only an employer can be sued under Title VII. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998) (finding that "Congress only intended employers to be liable for Title VII violations" and "individual liability would improperly expand the remedial scheme crafted by Congress"); accord Scott v. Md. State Dep't of Lab., 673 F. App'x 299, 308 (4th Cir. 2016).

22

Plaintiff responds to the Motion to Dismiss with arguments related to negligence, and he references the business judgment rule. However, in the Complaint Plaintiff does not set forth a claim for negligence, and he does not describe an injury or a legal duty under North Carolina law. See also Osborne v. Walker, 48 N.C. App. 627, 628–29 (1980) ("The plaintiff contends the tort of negligence should apply within the corporate relationship. . . . We decline to extend the law of negligence as the plaintiff contends we should do. Without some personal injury negligence is usually not actionable. We believe it would put an undue burden on a supervisor who must make reports on employees to know that he or she might be sued for an unfavorable report."). Plaintiff's reference to the business judgment rule is inapplicable, as that doctrine relates to the duty of corporate officers to the company. See Seraph Garrison, LLC ex rel. Garrison Enters., Inc. v. Garrison, 247 N.C. App. 115 (2016). Ultimately, Plaintiff has not alleged any basis for a supervisory liability claim against the individual Defendants under North Carolina law. Plaintiff's claim for supervisory liability, whether it be under Title VII or a state law theory, should be dismissed.

IV.    MOTION TO STRIKE

Also before the Court is Defendants' Motion to Strike Plaintiff's sur-reply to their Motion to Dismiss. This District's Local Rules allow for parties to file a motion, response, and reply with respect to motions to dismiss. Generally, parties are not permitted to file sur-replies in this Court unless they first obtain permission of the Court, which may be granted if fairness dictates, such as where there are new matters raised for the first time in the reply brief. See DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) ("Parties do not have the right to file a surreply."). Here, Plaintiff failed to request leave to file a sur-reply, and the sur-

23

reply is not procedurally proper. However, even if it is considered, the sur-reply would not affect the analysis here. Therefore, the Court will not strike Plaintiff's sur-reply, but Plaintiff is cautioned that he must familiarize himself with the Federal Rules and this Court's Local Rules, and must take care to ensure that future filings follow the Rules and are procedurally proper.

## V. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss [Doc. #16] be granted in part and denied in part, specifically that Defendants' Motion to Dismiss be GRANTED as it relates to Plaintiff's state law claims and claims against the individual Defendants but DENIED as it relates to Plaintiff's claims for racial discrimination and retaliation under Title VII and § 1981 against Toshiba.

IT IS FURTHER RECOMMENDED that as a result, Defendants Michael Glendenning Steven Mensch, James Fornabaio, Scott Enke, Patrick Tarry, Amanda Stevens, and Bob Hunsinger be dismissed from this action, as none of the claims proceeding are properly against them.

IT IS ORDERED that Defendants' Motion to Strike [Doc. #24] is DENIED, but Plaintiff is cautioned to make himself aware of this Court's Local Rules for future filings.

This, the 25th day of March, 2026.

Joi Elizabeth Peake
United States Magistrate Judge

24